manatt

# Potter v. Blue Shield of California Life & Health Ins. Co., Case No. 14-CV-00837 (C.D. Cal.)

Bench Trial

October 24, 2016

1

manatt

# POTTER v. BLUE SHIELD – BENCH TRIAL

<u>Part 1</u>:  The benefits provided under the insurance contract

<u>Part 2</u>:  Blue Shield's level of care guidelines

<u>Part 3</u>:  Applying the level of care guidelines for residential psychiatric treatment in this case

Potter v. Blue Shield, 14-CV-00837

2

**manatt**

# PART 1: THE BENEFITS UNDER THE PLAN CONTRACT

- Does the insurance contract include benefits for psychiatric residential treatment?

- <u>Yes</u>, even though the Certificate of Insurance does not include benefits for residential treatment, the California Mental Health Parity Act, as interpreted by *Harlick*, requires insurers to cover medically necessary residential treatment for individuals with certain defined "severe mental illnesses" – including bipolar disorder.

- But the California Mental Health Parity Act does <u>not</u> require health insurers to cover substance abuse treatment.

# PART 1: THE BENEFITS UNDER THE PLAN CONTRACT



- Does the insurance contract include benefits for residential substance abuse treatment?



- No, the Certificate of Insurance excludes substance abuse treatment and residential treatment. (The Parity Act does not require coverage for substance abuse treatment.)

- Plaintiff's employer did not purchase the optional substance abuse benefits.

- The relevant portions of the Certificate of Insurance:

  - Section titled "General Exclusions" (AR Ex. A-2 at 740)

  - Section titled "Mental Health and Substance Abuse Benefits" (AR Ex. A-2 at 731-32)

  - Section titled "Summary of Benefits" (AR Ex. A-2 at 702)

manatt

3

# PART 1: THE BENEFITS UNDER THE PLAN CONTRACT
## (Certificate of Insurance)

4

manatt

Premier PPO 25

Blue Shield of California Life & Health
Insurance Company

**Certificate of Insurance**

Group

blue of california

blueshieldca.com

BSC00685
Ex. A-2 at 685

# PART 1: THE BENEFITS UNDER THE PLAN CONTRACT

## (Certificate of Insurance – "General Exclusions")

the likely result of a diagnosed and identifiable medical condition, illness, or injury to the nervous system or to the vocal, swallowing, or auditory organs.

Except as specified above and as stated under the Home Health Care Benefits and Hospice Program Benefits sections, no Outpatient benefits are provided for Speech Therapy, speech correction, or speech pathology services.

Note: See the Home Health Care Benefits section for information on coverage for Speech Therapy Services rendered in the home.

See the Inpatient Services for Treatment of Illness or Injury section for information on Inpatient Benefits and the Hospice Program Benefits section.

### TRANSPLANT BENEFITS – CORNEA, KIDNEY OR SKIN

Benefits are provided for Hospital and professional Services provided in connection with human organ transplants only to the extent that:

1. they are provided in connection with the transplant of a cornea, kidney, or skin; and

2. the recipient of such transplant is a Subscriber or Dependent.

Benefits are provided for the Services rendered to otherwise the human organ transplant material from a living donor of an organ transplant bank.

### TRANSPLANT BENEFITS – SPECIAL

Benefits are provided for certain procedures, listed below, only if (1) performed at a Special Transplant Facility contracting as a Blue Shield Life Provider to provide the procedure or in the case of Controls accessing this Benefit outside of California, the procedure is performed at a transplant facility designated by Blue Shield Life, (2) prior authorization is obtained in writing from the Plan's Medical Director, and (3) the recipient of the transplant is a Subscriber or Dependent.

The Plan reserves the right to review all aspects for prior authorization for these Special Transplant Benefits and to make a decision regarding Benefits based on (1) the medical circumstances of each Patient and (2) conditions, between the treatment proposed and the Plan's medical policies. Failure to obtain prior written authorization as described above for any of the procedures performed under a contracting Special Transplant Facility will result in denial of claims for this Benefit.

The following procedures are eligible for coverage under this provision:

1. Human heart transplants.

2. Human heart transplants.

---

1. Human heart and lung transplants in combination.

4. Human liver transplants.

5. Human kidney and pancreas transplants in combination.

6. Human bone marrow transplants, including autologous bone marrow transplantation (ABMT) or autologous peripheral stem cell transplantation used to support high-dose chemotherapy when such treatment is Medically Necessary and not Experimental or Investigational.

7. Pediatric human small bowel transplants.

8. Pediatric and adult human small bowel and liver transplants or combination.

Benefits are provided for Services incident to obtaining the transplant material from a living donor or an organ transplant bank.

## PRINCIPAL LIMITATIONS, EXCEPTIONS, EXCLUSIONS AND REDUCTIONS

### GENERAL EXCLUSIONS

Unless exceptions to the following are specifically made elsewhere in this booklet, no benefits are provided for the following services:

1. for or incident to hospitalization or confinement in a pain management center to treat or cure chronic pain, except as may be provided through a Participating Hospice Agency and except as Medically Necessary;

2. for Rehabilitation Services, except as specifically provided in the Inpatient Services for Treatment of Illness or Injury, the Home Health Care Benefits, the Rehabilitation Benefits (Physical, Occupational, and Respiratory Therapy) and the Hospice Program Benefits sections;

3. for or incident to services rendered in the home or hospitalization or confinement in a health facility primarily for rest (Custodial Maintenance, Domiciliary Care or Residential Care except as provided under Hospice Program Benefits (see Hospice Program Benefits for exception));

4. performed in a Hospital by house officers, residents, interns and others in training;

5. performed by a Close Relative or by a person who ordinarily resides in the Insured's home;

---

6. for substance abuse treatment or rehabilitation on an Inpatient, Partial Hospitalization or Outpatient basis except as specifically listed under Mental Health and Substance Abuse Benefits.

7. for Outpatient Mental Health Services, except as specifically listed under Mental Health and Substance Abuse Benefits.

8. for hearing aids, cochlear implants, bone anchored hearing aids, and auditory brainstem implants.

9. for mammographies, Pap Tests or other FDA (Food and Drug Administration) approved cervical cancer screening tests, family planning and consultation Services, colorectal cancer screenings; and Annual Health Appraisal Exams by Non-Preferred Providers.

10. for eye refractions, surgery to correct refractive error (such as but not limited to radial keratotomy, refractive keratoplasty), lenses and frames for eyeglasses, and contact lenses except as specifically listed under Prosthetic Appliances Benefit, and low-vision optical aids or video magnification equipment for any purpose.

11. for any type of communication voice enhancer, voice prosthesis, electronic voice producing machine or any other language assistance devices, except as specifically listed under Prosthetic Appliances Benefits.

12. for routine physical examinations, except as specifically listed under Preventive Health Benefits, or for immunizations and medication by any route of administration unless, injection or otherwise solely for the purpose of travel, or for examinations required for licensure, employment or insurance unless the exam is otherwise provided for the Annual Health Appraisal Exam.

13. for or incident to acupuncture, except as may be provided under Acupuncture Benefits.

14. for or incident to Speech Therapy, speech correction or speech pathology or speech abnormalities that are not likely the result of a diagnosed, identifiable medical condition, in-

---

jury or illness except as specifically listed under the Home Health Care Benefits, Speech Therapy Benefits and Hospice Program Benefits.

15. for drugs and medicines which cannot be lawfully marketed without approval of the U.S. Food and Drug Administration (the "FDA") however, drugs and medicines which have received FDA approval for marketing for one or more uses will not be denied on the basis that they are being prescribed for an off-label use if the conditions set forth in California Insurance Code Section 10123.195 have been met.

16. for or incident to vocational, educational, recreational, art, dance, music or reading therapy, weight control programs, or exercise programs, nutritional counseling, except as specifically provided for under Diabetes Care Benefits.

17. for transgender or gender dysphoria conditions, including but not limited to, intersex surgery, transsexual operations, or any related services, or any resulting medical complications, except for treatment of medical complications of a Medically Necessary.

18. for sexual dysfunctions and sexual inadequacies except as provided for treatment of an organically based condition.

19. for or incident to the treatment of Infertility, including the cause of Infertility or any form of assisted reproduction, including, but not limited to reversal of surgical sterilization, or any resulting complications, except for Medically Necessary treatment of medical complications.

20. for either corn paring or excision and normal trimming except as may be provided through a Participating Hospice Agency, treatment (other than surgery) of chronic conditions of the foot or treatment of weak or fallen arches or pronated feet, pain or cramp of the feet, for special footwear required for foot disfigurement (e.g. non-custom made or over-the-counter shoe inserts or arch supports) except as specifically listed under Orthotics Benefits and Diabetes Care Benefits, bunions, or man-

BSC00739
Ex. A-2 at 739

BSC00740
Ex. A-2 at 740

manatt

# PART 1: THE BENEFITS UNDER THE PLAN CONTRACT
## (Certificate of Insurance – "General Exclusions")

**GENERAL EXCLUSIONS**

Unless exceptions to the following are specifically made elsewhere in this booklet, no benefits are provided for the following services.

3. for or incident to services rendered in the home or hospitalization or confinement in a health facility primarily for rest, Custodial, Maintenance, Domiciliary Care, or Residential Care except as provided under Hospice Program Benefits (see Hospice Program Benefits for exception).

6. for substance abuse treatment or rehabilitation on an Inpatient, Partial Hospitalization or Outpatient basis except as specifically listed under Mental Health and Substance Abuse Benefits.

The plan contract defines "Residential Care" at AR Ex. A-2 at 763:

**Residential Care** — services provided in a facility or a free-standing residential treatment center that provides overnight/extended-stay services for Insureds who do not qualify for Acute Care or Skilled Nursing Services. This definition does not apply to services rendered under the Hospice Program Benefit.

# PART 1:  THE BENEFITS UNDER THE PLAN CONTRACT
(Certificate of Insurance – "Summary of Benefits")

## Summary of Benefits

**Mental Health and Substance Abuse Benefits**

Inpatient Hospital Services[19]

Note: Unless selected as an optional Benefit by your Employer, no benefits are provided for inpatient substance abuse Services, except for inpatient substance abuse detoxification which is covered as any other medical Benefit shown in this Summary of Benefits

Inpatient Professional (Physician) Services

Outpatient Partial Hospitalization[18]

Initial Visit

Note: For the initial Outpatient visit to determine the condition and diagnosis of the Insured, the Copayments/Coinsurance listed for Outpatient Mental Health visits for Severe Mental Illnesses of an Insured of any age and of Serious Emotional Disturbances of a Child will apply. Initial visits which are subsequently diagnosed as being for other than Severe Mental Illnesses or Serious Emotional Disturbances of a Child or for substance abuse care will also accrue toward the 20 visit maximum

Outpatient Psychiatric Care, Intensive Outpatient care, and Outpatient electroconvulsive therapy (ECT) for Severe Mental Illnesses of an Insured of any age and of Serious Emotional Disturbances of a Child[18]

Outpatient Psychiatric Care for other than Severe Mental Illnesses or Serious Emotional Disturbances of a Child and for substance abuse care

Note: Services are limited to a combined Benefit maximum of 20 visits per Insured per Calendar Year. No benefits are provided for Outpatient or out-of-Hospital Mental Health Services and substance abuse care from MHSA Non-Participating Providers, except for the initial visit

Psychological testing

Psychosocial support through LifeReferrals 24/7

| Benefit | INSURED COPAYMENT/COINSURANCE[2] | | |
|---|---|---|---|
| | Services by MHSA Participating Providers | Services by MHSA Non-Participating Providers[3] | |
| Mental Health and Substance Abuse Benefits (All Services provided through the Plan's Mental Health Service Administrator ("MHSA"))[19] | | | |
| Mental Health and Substance Abuse Benefits Inpatient Hospital Services[19] | 0% | 45% of up to $600 per day[4] | |
| Note: Unless selected as an optional Benefit by your Employer, no benefits are provided for inpatient substance abuse Services, except for inpatient substance abuse detoxification which is covered as any other medical Benefit shown in this Summary of Benefits | | | |
| Inpatient Professional (Physician) Services | 0% | 45% | |
| Outpatient Partial Hospitalization[18] | 30% per episode[24] | 45% per episode or up to $300 per day[4] | |
| Initial Visit | $45 per visit | 45% | |
| Note: ... | | | |
| Outpatient Psychiatric Care, Intensive Outpatient care, and Outpatient electroconvulsive therapy (ECT)... [18] | $45 per visit[24] | 45%[4] | |
| Outpatient Psychiatric Care for other than Severe Mental Illnesses or Serious Emotional Disturbances of a Child... | 0% | Not covered | |
| Note: ... | | | |
| Psychological testing | $45 per visit | 45% | |
| Psychosocial support through LifeReferrals 24/7 | $0 per nothing | You pay nothing | |

DOJPP-SG (1-13)          B-11

# PART 1: THE BENEFITS UNDER THE PLAN CONTRACT
## (Declaration of Jennifer Garrison)

### DECLARATION OF JENNIFER GARRISON

3.    Plaintiff enrolled in Blue Shield's Premier PPO 25 health plan. His son, Nicholas Potter, was listed as a dependent on the plan, which was a group policy purchased by Hughes Investments. Hughes Investments did not purchase the optional substance abuse benefit. Accordingly, from 2012 to 2013, the Hughes Investment plan Plaintiff was enrolled in did not include substance abuse benefits.

4.    Attached as **Exhibit A** is a screen-shot of Blue Shield's computer system that lists the benefits that Hughes Investments purchased. If Hughes Investments had purchased the optional substance abuse benefit, it would be listed under "Benefit Grouping" as "SUBABUS."



manatt

# PART 1: THE BENEFITS UNDER THE PLAN CONTRACT

10

| Level of Care | Psychiatric Disorders | Substance Abuse |
|---|---|---|
| Residential treatment | Not covered.<br><br>Also excluded under exclusion #3.<br><br>*Except as required by the Mental Health Parity Act* | Not covered.<br><br>Also excluded under exclusions #3 and #6. |

Potter v. Blue Shield, 14-CV-00837

manatt

## PART 1: THE BENEFITS UNDER THE PLAN CONTRACT
### (Plaintiff's "waiver" argument)

- Plaintiff argues that Blue Shield "waived" any argument regarding substance abuse benefits, because Blue Shield did not mention substance abuse in its denial letter.

- Plaintiff does not cite any case – because no case exists – holding that an insurer's communications with a member can <u>create</u> new benefits that are not found in the contract and that were never purchased by the member or his employer.

- There was no waiver here. Plaintiff requested coverage for psychiatric treatment, <u>not</u> substance abuse treatment as shown by:

  - The "Subscriber Claim Form for Services Received Outside California" Plaintiff completed to request coverage

  - Blue Shield's initial denial letter, dated October 24, 2013

manatt

Potter v. Blue Shield, 14-CV-00837

# PART 1: THE BENEFITS UNDER THE PLAN CONTRACT
## (Plaintiff's "waiver" argument – Plaintiff's Claim Form)



manatt

Potter v. Blue Shield, 14-CV-00837

# PART 1: THE BENEFITS UNDER THE PLAN CONTRACT
## (Plaintiff's "waiver" argument – Blue Shield's Denial Letter)



blue 💙 of california

October 24, 2013

Nicholas Potter
14 Cape Andover
Newport Beach, CA 92660

Subscriber Name:    John Potter
Patient Name:       Nicholas Potter

Dear Mr. Potter,

It has been determined that your request for coverage of psychiatric residential treatment at Innercept in Idaho, for dates of service June 1, 2012, through December 21, 2012, has been denied.

For the billed services. Since, without medical records, it is not possible to determine if you meet the Blue Shield Life medically necessary criteria for coverage of psychiatric residential treatment on dates of service June 1, 2012, through December 21, 2012. If your provider submits copies of your medical records to Blue Shield Life; then your request for coverage of psychiatric residential treatment will be reconsidered.

BSC00278
Ex. A-1 at 278

manatt

14

manatt

# PART 2:   BLUE SHIELD'S LEVEL OF CARE GUIDELINES

- To determine medical necessity, Blue Shield relies on level of care guidelines that provide detailed medical necessity criteria for different medical conditions and types of treatment.

  – The guidelines help to standardize coverage decisions and ensure coverage decisions are consistent with evidence-based medicine.

  – The guidelines are based on medical textbooks, peer review scientific journals, and guidelines published by well-respected physician and industry associations.

- Psychiatric illnesses may be treated in a variety of settings, listed below from most intensive to least intensive:

  - Inpatient hospitalization
  - Residential treatment
  - Partial hospitalization
  - Intensive outpatient
  - Outpatient treatment

15

manatt

## PART 2:  BLUE SHIELD'S LEVEL OF CARE GUIDELINES

- Blue Shield has level of care guidelines with specific medical necessity criteria for each of these levels of care.

- Plaintiff has not put forth <u>any</u> evidence or argument that Blue Shield's level of care guidelines deviate from professional or industry standards.

- Nor has Plaintiff pointed to any inconsistency between the level of care guidelines and the terms of the plan contract. The guidelines are consistent with the plan, which requires that the service be provided at "the most appropriate level."

- The guidelines referenced in Blue Shield's initial denial letter are the guidelines for <u>psychiatric residential treatment</u>. Those are the guidelines that are dispositive in this case. (But the guidelines for substance abuse residential treatment are not satisfied either.)

16

manatt

# PART 2: BLUE SHIELD'S LEVEL OF CARE GUIDELINES

- The plan's definition of medical necessity (AR Ex. A-2 at 762):

**Medical Necessity (Medically Necessary)** —

The Benefits of this Plan are provided only for Services which are Medically Necessary.

1. Services which are Medically Necessary include only those which have been established as safe and effective, ==are furnished under generally accepted professional standards== to treat illness, injury or medical condition, and which, as determined by the Plan, are:

   a. consistent with the Plan's medical policy;

   b. consistent with the symptoms or diagnosis;

   c. not furnished primarily for the convenience of the patient, the attending Physician or other provider; and

   d. ==furnished at the most appropriate level which can be provided safely and effectively to the patient==

2. If there are two or more Medically Necessary services that may be provided for the illness, injury or medical condition, Blue Shield Life will provide benefits based on the most cost-effective service.

3. Hospital Inpatient Services which are Medically Necessary include only those Services which satisfy the above requirements, require the acute bed-patient (overnight) setting, and which could not have been provided in the Physician's office, the Outpatient department of a Hospital, or in another lesser facility without adversely affecting the patient's condition or

the quality of medical care rendered. Inpatient Services not Medically Necessary include hospitalization:

   a. for diagnostic studies that could have been provided on an Outpatient basis;

   b. for medical observation or evaluation;

   c. for personal comfort;

   d. in a pain management center to treat or cure chronic pain; and

   e. for Inpatient Rehabilitation that can be provided on an Outpatient basis.

4. The Plan reserves the right to review all claims to determine whether Services are Medically Necessary, and may use the services of Physician consultants, peer review committees of professional societies or Hospitals and other consultants.

Potter v. Blue Shield, 14-CV-00837

17

manatt

# PART 2: BLUE SHIELD'S LEVEL OF CARE GUIDELINES

- On remand, Blue Shield asked two medical reviewers to review Plaintiff's claim for benefits:

  - Dr. Michael Millman: Dr. Millman is Blue Shield's Director of Behavioral Health. He received his Ph.D. in clinical psychology in 1980 and has had a clinical practice since 1985.

  - Dr. Barbara Center: Dr. Center does not work for Blue Shield. She works for Prest & Associates. Dr. Center, a board-certified psychiatrist, was hired as an independent, third-party reviewer in this case.

- Drs. Millman and Center were provided all of the new Innercept medical records.

  - In the administrative record are documents, emails, and discovery responses that show precisely what documents were provided to them.

- Drs. Millman and Center reviewed and considered a number of medical necessity guidelines.

Potter v. Blue Shield, 14-CV-00837

18

manatt

# PART 2:  BLUE SHIELD'S LEVEL OF CARE GUIDELINES

- Dr. Center considered the following guidelines:

  – Magellan's "Residential Treatment, Psychiatric, Adult and Geriatric"

  – Magellan's "Residential Treatment, Substance Use Disorders, Rehabilitation, Adult and Geriatric"

- Dr. Millman considered the <u>same</u> guidelines above and <u>also</u> considered the following:

  – Blue Shield's "Residential Acute Behavioral Health Level of Care, Adult"

  – Blue Shield's "Residential Acute Behavioral Health Level of Care, Child or Adolescent"

  – Blue Shield's "Substance-Related Disorders: Residential Care"

  – Blue Shield's "Substance-Related Disorders, Residential Behavioral Health Level of Care, Child or Adolescent"

  – Blue Shield's "Bipolar Disorders: Residential Care"

19

manatt

# PART 2:  BLUE SHIELD'S LEVEL OF CARE GUIDELINES

- Drs. Millman and Center found that <u>none</u> of these medical necessity guidelines were met in this case.

- In his trial brief, Plaintiff objects to the reviewers' consideration of the Magellan guidelines.

  - Plaintiff has not identified any material difference between the guidelines.

  - Nonetheless, Blue Shield will focus on the Blue Shield guidelines in its presentation today.

- The dispositive guidelines are the psychiatric residential treatment guidelines. Those are the guidelines referenced in Blue Shield's initial denial letter, dated October 24, 2013.

20

## PART 3: APPLYING THE GUIDELINES IN THIS CASE

- The Blue Shield "Residential Acute Behavioral Health Level of Care, Adult" guidelines are at AR Ex. F-3 at 1141-47.

- The guidelines contain two sets of criteria:

  - "Admission Guidelines"

  - "Discharge Guidelines"

- Nicholas Potter satisfied the "Admission Guidelines" when he was admitted to Innercept in January 2012 because he was suicidal.

- Nicholas improved substantially between January and June 2012.

- By July 1, 2012, Nicholas was highly functioning and satisfied the "Discharge Guidelines."

manatt

# PART 3: APPLYING THE GUIDELINES IN THIS CASE
## ("Admission Guidelines" for Psychiatric Residential Treatment)

- The "Admission Guidelines" state that psychiatric residential treatment is appropriate if "[a]round-the-clock behavioral care is necessary for treatment because of **1 or more** of the following:"

1. "Imminent danger to self is present," i.e. suicidal thoughts.

2. "Imminent danger to others is present," i.e. homicidal thoughts.

3. "Severe deficit in ability to perform self-care activity is present (e.g. self-neglect with inability to provide for self at lower level of care)."

4. "Severe disability or disorder requiring acute residential intervention is present," such as "[m]ajor dysfunction in daily living," "[s]evere problem with cognition, memory, or judgment," and"[s]evere psychiatric symptoms" like "hallucinations, delusions, other acute psychotic symptoms, mania, extreme agitation or anxiety."

5. "Severe comorbid substance use disorder is present that must be controlled (e.g. abstinence necessary) to achieve stabilization of primary psychiatric disorder."

6. "Patient currently has stabilized during inpatient [hospital] treatment stay for severe symptoms or behavior and requires structured setting with continued around-the-clock behavioral care."

21

manatt

Potter v. Blue Shield, 14-CV-00837

22

# PART 3: APPLYING THE GUIDELINES IN THIS CASE
("Admission Guidelines" for Psychiatric Residential Treatment)

## **<u>AND</u>**

- "There are no exclusions to treatment: situation and expectations are appropriate for residential level." The treatment must be "necessary, appropriate, and not feasible at a lower level of care"

manatt

Potter v. Blue Shield, 14-CV-00837

23

manatt

# PART 3:  APPLYING THE GUIDELINES IN THIS CASE
## ("Discharge Guidelines" for Psychiatric Residential Treatment)

- The "Discharge Guidelines" state that "[c]ontinued residential care generally is needed until" either 1 or 2 below are satisfied:

1. **"Residential care no longer necessary due to adequate patient stabilization or improvement as indicated by ALL of the following:**

   a)  "Risk status acceptable as indicated by **ALL** of the following."

      - "Danger to self or others manageable," i.e. not suicidal or homicidal.
      - "Patient supports and understands follow-up treatment and crisis plan."
      - "Provider and supports are sufficiently available at lower level of care."
      - "Patient, as appropriate, can participate as needed in monitoring at available lower level of care."

   b)  "Functional status acceptable as indicated by **1 or more** of the following."

      - "No essential function[c] is significantly impaired." ("[C] Essential functions are those that are necessary to sustain life, such as feeding and hydrating oneself.")
      - "An essential function is impaired, but impairment is manageable at available lower level of care."

Potter v. Blue Shield, 14-CV-00837

24

manatt

# PART 3: APPLYING THE GUIDELINES IN THIS CASE
## ("Discharge Guidelines" for Psychiatric Residential Treatment)

(Continued)

c) "Medical needs absent or manageable at available lower of care as indicated by **ALL** of the following:"

- "Adverse medication effects absent or manageable."
- "Medical comorbidity absent or manageable."
- "Medical complications absent or manageable (e.g. complications of eating disorder)."

- "Substance-related disorder absent or manageable."

### OR

2. "**Residential care no longer appropriate due to patient progress record or consent as indicated by 1 or more of the following:**"

- "Patient deterioration requires higher level of care."
- "Patient or guardian no longer consent to treatment."

Potter v. Blue Shield, 14-CV-00837

25

manatt

# PART 3:  APPLYING THE GUIDELINES IN THIS CASE
## ("Discharge Guidelines" for Psychiatric Residential Treatment)

- As of July 1, 2012, Nicholas satisfied both discharge criteria.

1. **Residential treatment was no longer medically necessary for Nicholas.**

   - His risk status was acceptable.  Nicholas' physiatrist and therapist affirmatively indicated in the medical records that he was not a danger to self or others.

   - His functional status was acceptable.  Not only was Nicholas able to care for his basic needs, but he was also cooking for himself, exercising, performing at the highest levels academically, and functioning well socially (dating, volunteering, working, and participating in an extracurricular soccer league).

   - His ongoing medication needs were manageable at a lower level of care.  Nicholas was not receiving any new medications, and he told his psychiatrist he suffered no side effects as a result of the minor changes to his medication.

2. **Residential treatment was no longer appropriate based on Nicholas' progress record and consent.**

   - Nicholas improved dramatically between January and July, 2012.  He no longer needed around-the-clock behavioral treatment.

   - Nicholas was a legal adult and indicated he did not wish to continue the program.  The records indicate that he continued as his parents' request.